## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

SHERYL HUBBELL,

                    Case No. 14-13897
                    Hon. George Caram Steeh

           Plaintiff,

vs.

FEDEX SMARTPOST, INC.,
a foreign profit corporation doing
business in Michigan,

           Defendant.

_____/

RAYMOND GUZALL III (P60980)    Jessica A. Sprovtsoff (P70218)
RAYMOND GUZALL III, P.C.      Robert J. Wierenga (P59785)
Attorney for Plaintiff            Schiff Haardin, LLP
31555 W. Fourteen Mile Rd., Suite 320  350 S. Main St., Suite 210
Farmington Hills, MI 48334      Ann Arbor, MI 48104
rayguzall@attorneyguzall.com    (734) 222-1518
(248) 702-6122 Office         (734) 222-1501 Fax
(248) 702-6124 Fax

OMAR S. NAJOR, PLC         BARAK J. BABCOCK
OMAR S. NAJOR (P58066)      1000 FEDEX DRIVE
31555 W. Fourteen Mile Rd., Ste. 316  Moon Township, PA 15108
Farmington Hills, MI 48334      (412) 859-5763
omarnajor@gmail.com          (901) 492-9930
(248) 702-6756 Office         Attorneys for Defendant
(248) 702-6124 Fax

_____/

## PLAINTIFF'S FIRST AMENDED
## VERIFIED COMPLAINT AND DEMAND FOR JURY

## PLAINTIFF'S FIRST AMENDED
## VERIFIED COMPLAINT AND DEMAND FOR JURY

NOW COMES Plaintiff, SHERYL HUBBELL, by and through her

attorney, Raymond Guzall III, P.C., by Raymond Guzall III, and for her

Amended Complaint against FEDEX SMARTPOST, INC., a foreign profit

corporation doing business in the State of Michigan, states as follows:

## COUNT I

## GENDER DISCRIMINATION

1.    Plaintiff SHERYL HUBBELL, is female, and at all times pertinent

      hereto, was employed by the Defendant FEDEX SMARTPOST, INC.,

      in Wayne County, State of Michigan.

2.    Defendant FEDEX SMARTPOST, INC., is a foreign profit corporation

      doing business in the State of Michigan, in Wayne County, State of

      Michigan.

3.    *Subsequent to the filing of the verified complaint in this matter,*

      *Plaintiff was terminated by Defendant on December 15, 2014.*

4.    Plaintiff worked for Defendant for approximately 8 years.

5.    Men and women were treated differently at Fedex SmartPost and

      Plaintiff was discriminated against based on her gender.

2

6.     Ms. Hubbell was singled out in regards to discipline and treated differently than other similarly situated male employees.

7.     Plaintiff was denied promotions and management positions by Defendant based on her gender and male employees were given promotions and management positions ahead of her.

8.     In 2010, Plaintiff applied and interviewed for a management position but it was given to a male employee that Plaintiff had trained.

9.     Plaintiff was discouraged by Management from applying for leadership roles and management positions because of her gender, whereas male employees were encouraged to apply for management positions.

10.    Plaintiff was told numerous times by management that she should stop considering or applying for management positions because of her gender.

11.    Plaintiff was told by management that women are better suited for administrative positions and men are better suited for management positions.

12.    On another occasion, Plaintiff was told by management, "Not to sound sexist, but most women perform better in administrative roles

3

and seem to trend toward those roles," and that, "male employees do better in leadership roles and most females don't possess the competencies necessary to be successful as leaders, that is why you find more women as secretaries or clerks."

13. Plaintiff was told by a "hub manager" that he had no intention on promoting her to management positions because of her gender, yet male employees were encouraged to pursue management positions and in fact were given those positions which included increased compensation.

14. Plaintiff was told by management and human resources to demote from her position as a Lead based on her gender.

15. Plaintiff was demoted to a role that did not include leadership supervisor duties by Defendant based upon her gender.

16. Plaintiff was not allowed to attend certain meetings that as her position as a Lead *required*, yet male employees similarly situated as Plaintiff *were* allowed to attend.

17. Plaintiff was belittled, demeaned and treated with hostility by management after making complaints of management's discrimination towards women in general, but more particularly,

4

herself.

18. *Plaintiff was treated differently by management after making her complaints.* Subsequently, management began to give her write-ups and poor reviews so she couldn't advance, despite many of her full time co-workers who are of the opinion she does a great job and are of the opinion she is being harassed by management for speaking out and engaging in protected activities.

19. After Defendant brought in Todd Treman to be the hub manager in the beginning of 2011, Plaintiff and women in general were treated harsher by the Defendant. Throughout the year of 2011, more females were demoted than males and more males were hired or promoted to management positions.

20. At the beginning of the year 2012, there were ten male managers and one black female manager.

21. In January 2012, Plaintiff was called into a meeting with management and human resources where she was told by the hub manager, Todd Treman, "This is the last chance I'll give you to take a step down, things will continue to get harder for you from here on out if you don't." Plaintiff was further told, "Leadership roles are typically suited

5

for male employees, I don't understand why you won't comply with
my requests [to step down or demote herself], you've been asked
many times now."

22. Plaintiff was given less of a raise than all other employees when
raises were previously distributed in the year 2013.

23. Fedex SmartPost attempted to cover up the fact that they
discriminate against women in the workplace by promoting a part
time female employee to a full time Lead and then to a Dock
Manager all within a matter of months, and that never had been done
before in that short of a time span with any other employee.

24. That attempt to cover up the fact that Defendants discriminate
against women in the workplace by promoting a part time female
employee to a full time Lead and then to a Dock Manager all within a
matter of months was done after Plaintiff filed her complaint of
gender discrimination with the EEOC/Michigan Department of Civil
Rights.

25. Plaintiff was treated differently by Defendant because of her gender,
in violation of Title 7, Civil Rights Act of 1964, seq., 70l et seq., 42
U.S.C.2000e, et seq.

6

26. The Court has jurisdiction based upon Plaintiffs federal claims, and venue is proper with this Court.

27. Defendant has an illegal pattern and practice of discriminating against female employees.

28. *Disparate treatment is evident from the facts plead herein as Plaintiff being a female employee was a motivating factor in the adverse employment actions taken against Plaintiff.*

29. *Defendant claims they took adverse employment actions against Plaintiff and terminated Plaintiff for legitimate reasons.*

30. *Plaintiff here pleads both a traditional disparate treatment claim and a mixed motive claim. See, White v Baxter Healthcare Corp, 533 F3d 381 (CA 6 2008)*

31. *Defendant engaged in discriminatory practice with malice or with reckless indifference to Plaintiff's federally protected rights, as plead herein.*

32. Defendants management made statements regarding how they discriminate against their female employees.

33. *Plaintiff filed a complaint with the EEOC/Michigan Department of Civil Rights against Fedex SmartPost in approximately October 2013*

7

*alleging sex and retaliation discrimination closing out that complaint.*

34. *Plaintiff's Right to Sue Letter was mailed out on approximately July 16, 2014 closing out the EEOC complaint.*

35. Because of the illegal conduct of the Defendant, Plaintiff has suffered emotional damages and wage loss, among other damages as stated herein, and to be included within this Count.

## COUNT II

## RETALIATION

36. Plaintiff re-alleges and incorporates *Paragraphs 1 through 35* as though set forth in full word for word and paragraph for paragraph.

37. Plaintiff filed a complaint with the EEOC/Michigan Department of Civil Rights against Fedex SmartPost in approximately October of 2013.

38. Plaintiff's Right to Sue letter was postmarked July 22, 2014, she received another Right to Sue letter in late August of 2014, closing out her EEOC complaints.

39. Plaintiff's Complaint is timely filed with this Court.

40. Plaintiff has been retaliated against by the Fedex SmartPost management to an extreme that no one has ever seen before at that

office.

41.    Plaintiff suffered an increase in hostile treatment after filing the
       EEOC complaint.

42.    Plaintiffs every action was even more closely monitored after filing
       the EEOC complaint.

43.    Plaintiff was retaliated against in November 2013 when she called off
       work 1 hour before her scheduled shift and later provided
       management with a doctor note for an excused absence. Although
       Plaintiff had called in 1 hour ahead of shift and provided  medical
       documentation for the absence, Plaintiff was still issued a write up for
       un-excused absence and not offered vacation day as compensation.
       Plaintiff had followed company attendance policy, and the Defendant
       Company refused to follow their own policy.

44.    Plaintiff filed another charge with the EEOC/Michigan Department of
       Civil Rights against Fedex Smart on or about March 10, 2014
       alleging retaliation.

45.    Plaintiff was retaliated against in violation of Title 7, Civil Rights Act of
       1964, seq., 70I et seq., 42 U.S.C.2000e, et seq., and other applicable
       law, and in particular, because she filed a discrimination charge with

the Michigan Department of Civil Rights/EEOC, against Defendant.

46.   The law holds, "Title VII's anti-retaliation provision prohibits any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Thompson v N Am Stainless, LP*, 131 S Ct 863, 868; 178 L Ed 2d 694 (2011), citation omitted.

47.   The law holds that, "...punitive damages are warranted when the employer engages in conduct that carries with it a "*perceived risk* that its actions will violate federal law."" *EEOC v Harbert-Yeargin, Inc*, 266 F3d 498, 513 (CA 6 2001), citation omitted.

48.   Punitive damages are allowed by law: "...(5) jury could have concluded that managers engaged in a pattern of calculated retaliatory conduct so egregious as to support award of punitive damages; (6) retaliation was properly imputed to corporate employer; and (7) a 50:1 ratio of punitive to compensatory damages did not violate due process." *Jeffries v Wal-Mart Stores, Inc*, 15 Fed Appx 252 (CA 6 2001).

49.   After filing the EEOC complaint, Plaintiff was written up for an un-excused absences even though Plaintiff followed the company

attendance policy.

50.    After filing the EEOC complaint, Plaintiff was frequently written up for
       fabricated violations and or treated worse by management for
       violations they alleged against her and proceeded to take action in
       front of other employees whereas no one else was treated that way,
       in an attempt to build up a documented excuse for the Defendant
       employer to keep Plaintiff from being promoted and to build an
       excuse to terminate Plaintiff in the future.

51.    After filing the EEOC complaint, Defendant attempted to force
       Plaintiff to accept and approve changes imposed by management to
       her time-sheet in violation of company policy and procedure and
       when she wouldn't sign off on the changes, she was threatened with
       insubordination and additional write ups.  Plaintiff was eventually
       written up for not approving the time-sheet changes made by
       management.

52.    In approximately March, 2014, Plaintiff was retaliated against when
       she was issued a write-up in her work area in front of other
       employees for a claimed mis-sorted package although Management
       knew that there had been floor plan changes in her work area and

11

the shipping crew also typically made changes to package locations after employees had left the area.  Plaintiff was treated differently than other employees as other employees had been given a grace period for claimed mis-sorts and some were only given a verbal counseling with the floor plan change, yet Plaintiff was forced to sign a written disciplinary action form.

53.    In approximately April 2014, Plaintiff was retaliated against when she was approved to leave work early for being sick by John McLaughlin and Steve Hillebrand, managers.  However, Defendant's then violated their own policy, as Plaintiff was still written up for an un-excused absence despite the managers approval and the subsequent doctors note Plaintiff had submitted the next day to them. That was not done to other employees who have been in the same situation, only done to Plaintiff.

54.    Plaintiff was retaliated against by managers, when threatened with disciplinary action if she did not remove her tinted safety glasses that she had a medical note for.  That treatment was not done to other employees including a previous employee who had worn sunglasses for a considerable length of time on daily basis.

55. On or around April 2014, Plaintiff was not compensated by
    Defendant after Defendant requested that Plaintiff leave after lunch
    and then take the next week off, where normally employees are
    compensated by management when told to leave the facility for
    reasons assigned by management.  Management then attempted to
    cover that up by sending a letter to Plaintiff's house pretending to not
    know the reason Plaintiff left work.

56. On or around May 2, 2014 Plaintiff was retaliated against when
    Plaintiff attempted to pick up her paycheck from a clerk and
    manager, Josh Ocelnik, refused to give Plaintiff her paycheck unless
    she would agree to clock in and approve unnecessary alterations in
    Mytime program that Defendant made to her time sheet.  Ocelnik
    tried to set Plaintiff up in an argument by refusing to give her the
    check until a driver witnessed what was going on.  Ocelnik then gave
    Plaintiff the check, and Plaintiff found out later that Ocelnik told the
    clerk that he would need him to sign a statement that Plaintiff was
    rude and displayed unnecessary conduct.  Other employees who
    came to pick up paychecks were not told to clock in and approve

13

changes to their time sheets before they would be given their paychecks.

57.   On or around May 6 or 7th, 2014  Plaintiff was retaliated against when Defendant disabled her badge so that she could not clock in or out all day in the computer, forcing Plaintiff to have to report her time-sheet to management on paper.  The next day, Plaintiff was confronted by management in front of Plaintiff's co-workers, to harass and embarrass Plaintiff, and told to stop what she was doing and immediately go to the time clock and approve changes in the Mytime program even though it is against company policy to force an approval to the time-sheet without giving Plaintiff the proper time as stated in the MyTime program rules which Plaintiff follows.

58.   On or around June and August, 2014, Plaintiff was retaliated against further when Defendants recognized Plaintiff's peers with awards at a big monthly meeting with all employees and management present, yet Plaintiff was purposely by-passed from receiving acknowledgments or awards.  Further, Plaintiff is not allowed to be recognized like her peers because she is restricted from assuming a leadership role per the demotion instructions by management.

14

59.   On or around, June 19, 2014, Plaintiff was retaliated against when manager Chris Jensen told Plaintiff in front a coworker that Plaintiff violated the company security policy when Plaintiff used the restroom without first requesting permission from management.  Plaintiff was treated differently when a Manager accused Plaintiff of committing a breach of security for using the restroom.  This was not done to other employees, but only done to Plaintiff.

60.   On or around July 2, 2014, Plaintiff was retaliated against when managers William N. and Lauren F. told Plaintiff's Supervisor over the radio to send Plaintiff out early from work for speaking with a co-worker.  This was not done to other employees who spoke to their co-workers, only to Plaintiff.

61.   On or around, July 28, 2014, Plaintiff was retaliated against when a manager asked a coworker what we were talking about while we were clocked out for lunch, Plaintiff was treated differently than other employees as Management did not inquire to the content of other employee conversations off the clock.

## COUNT III

## HOSTILE WORK ENVIRONMENT - Retaliation

62.  Plaintiff re-alleges and incorporates Paragraphs 1 through 61 as though set forth in full word for word and paragraph for paragraph.

63.  Defendant took Plaintiff's login access to its' computers away in approximately August or September 2013.

64.  Defendant employees told Plaintiff that she was no longer allowed to access Defendants' computer system in approximately August of 2013.

65.  All other Defendant employees are allowed to clock in differently than Plaintiff and therefore she is now being paid less money than all other employees in her classification.

66.  Defendant, subsequent to the EEOC filings, increased its' level of hostility toward Plaintiff to the point that they were and are watching and timing her every move including any conversation had with a co-workers and how much time she spends in the bathroom. Defendant's did not treat any other employee like they treated Plaintiff, and by their actions caused her additional harm and stress.

67.  Defendant increased its' hostile treatment of Plaintiff subsequent to the EEOC complaints in that management for the Defendant told

16

Plaintiff's Supervisors and co-workers not to speak to the Plaintiff, and if they did speak to her they would question that employee as to the content of the conversation, including conversations that were "off the clock", causing Plaintiff and coworkers fear and further alienating Plaintiff from the rest of her coworkers. No other employee received that kind of hostile treatment.

68.     Defendants' security was directed to wand Plaintiff for metal upon entry to the building every day, even though she did not beep when going through the metal detectors, starting around late October of 2013.

69.     Defendant also frequently checked Plaintiffs' signature on the sign out log sheets to use the restroom.

70.     Plaintiff is only given a 3 minute window to clock into work, and is not allowed to clock in outside of that 3 minute window.  However, all other like Defendant employees (Plaintiff's peers) are allowed to clock into work up to 15 minutes prior to their shift starting, and Plaintiff is not allowed to do so, in continuation of the hostile work environment against Plaintiff.

71.     Plaintiff was subject to hostile treatment by way of threats and

17

intimation by Defendant.  If Plaintiff, would not do as strictly asked by Defendant's management, Plaintiff was threatened with write ups for insubordination.  At times, Defendant executed on their threats.  No other employee endured anything close to that kind of treatment.

72.   For approximately 2 to 3 weeks in February of 2014, Plaintiff was forced to sign off on her time sheets by Defendant on almost a daily basis, when it was not necessary to do so, as the time sheets were accurate.  Yet Defendant made unnecessary changes to Plaintiff's time sheets anyway, and tried to force her to sign off on them.

73.   Plaintiff then complained to Human Resources on or about February 6, 2014 about the fact that Defendant made unnecessary changes to Plaintiff's time sheets anyway, and tried to force her to sign off on them, and yet that behavior by Defendant still continued for weeks.

74.   Plaintiff had no disciplinary actions in her work record until Todd Treman came into management at Defendant FedEx, at the location the location Plaintiff worked.

75.   Plaintiff did not have any bad reviews until Todd Treman came into management at Defendant FedEx, at the location Plaintiff worked.

76.   Plaintiff received numerous awards and recognition for her work until

Todd Treman came into management at Defendant FedEx.

77.   All of the retaliatory acts combined equate to a hostile work environment against Plaintiff.

78.   Defendant did everything they could do to make Plaintiff's life at work as horrible and as hostile as possible so she would quit her job, and ultimately forced her to seek medical advice.

79.   Defendant intentionally set Plaintiff up to fail on the job and attempted to sabotage her in the workplace.

80.   As a result of Defendant's illegal acts as outlined and stated herein, Plaintiff has been greatly damaged, in violation of the afore-stated causes of action, in that she has suffered and will be forced to suffer great economic and emotional harm, a loss of earning capacity, salary loss, emotional injuries with pain and suffering, including but not limited to emotional distress and mental anguish, all of which she has suffered as a result of the treatment by Defendant named herein, and from which Plaintiff currently suffers and can reasonably be expected to suffer from for the rest of her life.

81.   The wrongful and illegal actions of Defendant have damaged, and continue to damage Plaintiff, including but not limited to past, current

and future wage loss and other benefits including but not limited to 401k loss, costs, interest, exemplary and/or punitive damages and attorney fees.

82. Plaintiff has been damaged well in excess of the jurisdictional amount of $75,000.00.

83. *On December 15, 2014, Defendant retaliated against Plaintiff and terminated her employment with Defendant.*

## COUNT IV

## RETALIATION - POST COMPLAINT FILING

84. *Plaintiff re-alleges and incorporates Paragraphs 1 through 83 as though set forth in full word for word and paragraph for paragraph.*

85. *On October 8, 2014 Plaintiff filed her current lawsuit against Defendant.*

86. *Within two months of Defendants being served Plaintiff's lawsuit, her employment was terminated.*

87. *On February 2, 2015, Plaintiff filed Complaint with the EEOC alleging that she was retaliated against for the filing of her Complaint with the U. S. Federal Court in this matter.*

20

88. *Plaintiff's Right to Sue Letter was mailed on March 5, 2015, closing out her February 2, 2015 EEOC complaint.*

89. *Plaintiff was unlawfully retaliated against by Defendant as Defendant terminated Plaintiff on December 15, 2014 for filing her EEOC complaint against Defendant on October 8, 2014.*

WHEREFORE, your Plaintiff prays for judgment against Defendant, FEDEX SMARTPOST, a foreign for profit corporation doing business in the State of Michigan, in an amount well in excess of the jurisdictional amount of $75,000.00, plus costs and interest, including past, current and future damages and wage loss, 401k loss and other benefits, exemplary damages, punitive damages, and attorney fees for the illegal acts of Defendant as stated herein, and all other damages afforded by law to Plaintiff. Plaintiff further requests all other relief the Court deems appropriate in her favor as afforded by law.

21

The facts as stated within this Verified Complaint are true to the best of my knowledge, information and belief, and I will testify so in court.

*Sheryl Hubbell*
SHERYL HUBBELL

Subscribed and sworn to before me
this ___30___ day of __March__, 2015.

_____
Raymond Guzall III

Notary Public Oakland County, MI
My commission expires: 2-6-2021
                                    2021

**JURY DEMAND**

Plaintiff demands trial by jury in this matter.

Respectfully submitted,

RAYMOND GUZALL III, P.C.
/s/ Raymond Guzall III
RAYMOND GUZALL III (P60980)
Attorney for Plaintiff
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, MI 48334
(248) 702-6122