# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

Sheryl Hubbell,

                                        Case No. 2:14-cv-13897

                Plaintiff,              Hon. George Caram Steeh

vs.

FEDEX SMARTPOST, INC.,
a foreign profit corporation doing
business in Michigan

                Defendants,
_____/

## PLAINTIFF'S MOTION FOR ENTRY OF JUDGEMENT, COSTS, ATTORNEY FEES AND INTEREST

1

NOW COMES Plaintiff, Sheryl Hubbell, by and through her attorneys, Raymond Guzall III, P.C. by Raymond Guzall III, and Omar Najor, and in support of her Motion for Entry of Judgment, costs and attorney fees pursuant to FRCP 54, FRCP 58 and other applicable law, states:

1.    On June 9, 2017, the jury in this matter rendered their verdict. (Exhibit 1, verdict).

2.    The jury's verdict in this matter equates to $519,550.00.  (Ex. 1).

3.    From October 8, 2014, the filing date of this lawsuit, with interest, the total amount of judgment is $555,803.89 through June 30, 2017. (Exhibit 2).

4.    Judgement should be entered pursuant to FRCP 58 and other applicable law.

5.    MCL 600.6013 mandates interest on a judgment, attorney fees and costs and "...postjudgment interest properly runs from the date of the entry of judgment." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835, 110 S. Ct. 1570, 1576, 108 L. Ed. 2d 842 (1990).

6.    "Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees." *Fed. R. Civ. P. 58 (e)*.

2

7.   Pursuant to MCL 37.2802, "[a] court, in rendering a judgment in an action brought pursuant to this article, may award all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, to the complainant in the action if the court determines that the award is appropriate." *MCL 37.2802.*

8.   The law cited herein illustrates attorney fees and costs are awarded to the prevailing party pursuant to both State and Federal law.

WHEREFORE, Plaintiff Sheryl Hubbell requests this Honorable Court enter judgment forthwith against Defendant in the amount of $555,803.89 (which includes interest upon the judgment up to June 30, 2017 - see exhibit 2).  Plaintiff also requests this Court order that her costs of $9,180.78 and reasonable attorney fees for attorney Raymond Guzall III in the amount of $241,200.00 at a rate $450 per hour for the 536 hours expended, and attorney fees for attorney Omar Najor in the amount of

_____ at a rate of $250.00 per hour for the _____ hours expended be paid by Defendant, and that interest upon the judgment, attorney fees and costs shall accrue until paid in full by Defendant, and that Plaintiff be afforded all other relief in her favor that the Court deems appropriate.

3

## Brief in Support of Plaintiff's Motion for Entry of Judgement, Costs and Attorney Fees

### I.     Entry of Judgment should be in accord with the jury's verdict

Plaintiff here plead both State of Michigan and Federal Claims.  The

standards of liability are the same in a retaliation claim under Title VII and

Elliott-Larsen, and the jury's finding on the issue is binding:

> "However, the jury's failure to find the school board liable on the Elliott-Larsen retaliation claim is inconsistent with the court's finding of school board liability on the Title VII retaliation claim. **The standards of liability for both claims appear to be identical.** See Jenkins, 369 N.W.2d at 227 n. 2; Clark, 327 N.W.2d at 374. **Both claims also arose out of the same underlying facts. The factual question of retaliation vel non is common to both the Elliott-Larsen and Title VII claims. Thus two factfinders examining the same facts reached opposite conclusions as to whether Kitchen had been retaliated against by the school board. Consequently, we must determine which factfinder's conclusion should prevail.** We think it elementary that in such situations the principles of collateral estoppel control: "[w]hen a party has a right to a jury trial on an issue involved in a legal claim, **the judge is ... bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim.**" Lincoln v. Board of Regents, 697 F.2d 928, 934 (11th Cir.), cert. denied, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983). Accord Garza v. City of Omaha, 814 F.2d 553, 557 (8th Cir.1987); King v. Alco Controls Div., 746 F.2d 1331, 1332 & n. 2 (8th Cir.1984). **The judge in the instant case was bound by the jury's finding on the retaliation issue.** Accordingly, the court's finding of liability against the school board for the retaliation portion of the Title VII claim is reversed." Kitchen v. Chippewa Valley Sch., 825 F.2d 1004, 1014 (6th Cir. 1987),

4

emphasis added.

"Both Title VII and the ELCRA require similar evidentiary showings to sustain a retaliation claim." *Patton v. Sears, Roebuck & Co.*, 234 F.3d 1269 (6th Cir. 2000), cite omitted. "Since the Michigan statute has no damage caps, the Title VII limits do not apply." *Denhof v. City of Grand Rapids*, 494 F.3d 534, 548 (6th Cir. 2007). Therefore, judgment in this case should be entered in accord with the jury verdict in this case.

## II.   Determination of Attorney Fees

"In a diversity action, the Court must apply state substantive law and federal procedural law in determining an award of attorney fees." *Hunt v. Hadden*, 127 F. Supp. 3d 780, 786 (E.D. Mich. 2015), aff'd, 665 F. App'x 435 (6th Cir. 2016). In determining the reasonableness of the attorney fees requested, the trial court should "consider the totality of special circumstances," utilizing as appropriate the 6 factors listed in *Wood v. Detroit Auto Inter–Ins Exch*, 413 Mich. 573, 588; 321 NW2d 653 (1982), and the 8 factors in Michigan Rules of Professional Conduct (MRPC) Rule 1.5(a). Between the two sets of factors, there is some overlap.

> "The *Crawley* panel noted that there is no precise formula for
> computing the reasonableness of an attorney's fee, but said
> that factors to be considered are:

5

"(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *Wood, supra,* at 588.

Pursuant to the Michigan Rules of Professional Conduct (MRPC)

Rule 1.5(a):

"The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent." *(MRPC) Rule* 1.5(a)

6

**(1) the professional standing and experience of the attorney:**

Plaintiff's attorney Raymond Guzall III has been practicing law in the

State of Michigan, Oakland County, since the year 2000 and has remained

in good standing that entire time. (Exhibit 6). He was awarded the honor

of Top 100 Trial Lawyers in the year 2008 by the American Trial Lawyers

Association.

He obtained a $4,140,000.00 verdict against the City of Allen Park

and Police Chief Ken Dobson in the year 2004, before Judge Tarnow in

federal court, Eastern District of Michigan. By publication, fewer than 1%

of U. S. Lawyers have achieved Multi-Million Dollar awards. (Exhibit 8,

October 27, 2010 letter).

Since that $4 million plus verdict, Mr. Guzall has settled and/or

prevailed in several other individual cases involving employment

discrimination and retaliation at $100,000.00 and greater, including a

$475,500.00 settlement against Van Buren Township in the year 2010, a

$333,000.00 settlement against the City of Hamtramck in the year 2010, a

$100,000.00 settlement against the City of Lincoln Park and another case

against Allen Park at an arbitration hearing netting over $150,000.00.

In the year 2011, Mr. Guzall obtained a trial verdict of over $2 million

7

in an auto accident case, where he was awarded $300.00 per hour in attorney fees by Wayne County Circuit Court Judge Colombo. (Ex. 4, Transcript of June 3, 2011 hearing). In the year 2012, Mr. Guzall settled another employment discrimination and retaliation lawsuit in this Federal Court for over $1.7 million.

In the year 2013 Mr. Guzall tried an employment retaliation lawsuit against Greektown Casino with a trial verdict of $600,000.00 and was awarded attorney fees at the rate of $325.00 per hour (in that case Ms. Harris doubled her position at trial as Defendant's settlement offer prior to trial was $300,000 (which was the case evaluation award), however Ms. Harris declined to settle for that amount and attorney Guzall did not abandon his Client.

In 2014 Mr. Guzall obtained a $137,500.00 settlement against a multi-national corporation on the scale of Fedex without having to file a lawsuit. Further, in the year 2014 Mr. Guzall obtained a $207,500.00 settlement for (Violation of 1st Amendment and illegal termination), a $475,000.00 settlement for (Employment Discrimination and Retaliation), and a $610,000.00 settlement for (Employment Discrimination and Retaliation), all of those cases originating in Wayne County Michigan.

8

Of note in the year 2015 Mr. Guzall obtained a $750,000.00

settlement for (Employment Discrimination), a $100,000.00 settlement for

(medical malpractice), and many settlements under $100,000.00 including

a settlement for $58,750.00 (1st Amendment violation and retaliation) and a

settlement for $22,500.00 (1st Amendment violation and retaliation).  In

2016 Mr. Guzall obtained a $180,000.00 Settlement for (Employment

Discrimination and retaliation - where the client was still employed at time

of settlement), a $90,000.00 Settlement for (Employment Discrimination

and retaliation - where Plaintiff obtained new employment at the same rate

of pay), and a $49,300.00 settlement (Employment Discrimination).  The

above 3 cases originated in Wayne and Oakland counties.

In 2017 Mr. Guzall obtained a $1,021,350.20 settlement for

(Employment Discrimination and retaliation) in this Federal Court (total

value being $1,858,553.20 as the Defendant ultimately agreed to pay

Plaintiff his claimed pension after being denied for 5 years).

Plaintiff's Counsel has tried approximately 40 cases before a judge,

jury and/or arbitration panel within his 17 plus years of practice.  He has

appeared before the Michigan Court of Appeals approximately 10 times

and has appeared before the 6th Circuit Court of Appeals approximately 7

9

times.  He has filed suit against some of the largest corporations in the world, including Wal-Mart, General Motors, Delphi and Faurecia Interior Systems, Inc, and has been successful in obtaining monetary settlements and awards for his Clients in each of those cases, and more.

Therefore, with two multi million dollar trial verdicts, various settlements over $100,000.00 and over $400,000.00 and two settlements over one million dollars in similar cases, a rate of $450.00 per hour for attorney Guzall is deemed at a minimum reasonable for the services rendered in the case at bar.  (The attached 2014 Economics Summary at exhibit 7 illustrates at page 6 a fee of $450 per hour for "employment law (plaintiff)" and at page 8 a fee of $500 for Oakland County - the location of Mr. Guzall's office, and at page 9 a fee of $500 for Wayne County - the location of the trial in this case, all of which illustrate the reasonableness of the fee requested by attorney Guzall).

Attorney Omar Najor, has nearly 3 years of experience serving as Co-Counsel with Raymond Guzall III on several other cases involving employment discrimination, one of which settled for $180,000.00 prior to trial.  Before working with attorney Guzall on employment discrimination cases, Omar Najor has mainly had a general practice focusing on

10

collections litigation, business, probate and estate planning, and criminal law. Mr. Najor has also served as a Case Evaluator for the Oakland County Bar Association for nearly 8 years and is in good standing with the Michigan State Bar. (Exhibit 10).

### (2) the skill, time and labor involved

The case at bar required extensive discovery. Over one thousand pages were obtained in discovery and reviewed, along with videos and audio recordings produced. A total of 11 witnesses were deposed in this case, and an additional 6 witnesses were called at trial who's deposition's were not taken. In addition, many more witnesses were contacted by Plaintiff's Counsel but were afraid to testify in this case for fear of retaliation.

Defendant litigated this case vigorously and Defense Counsel told Plaintiff's Counsel that they would. Plaintiff was forced to file several pleadings, responses, replies and motions, and appear in court on several occasions. Many Defense witnesses testified in direct contradiction to their own testimony and in direct contradiction to other employees and former employees of the Defendant, and thus Plaintiff's Counsel had to be prepared to meet those contradictions, and did so with deposition

11

transcripts within it's pleadings filed with this Court and at trial.

In addition, Defendant made several motions to dismiss Plaintiff's case and fought at every turn to eliminate any claim of liability. Within 23 days before trial, Defendant took the deposition of their former Manager John Molnar. The deposition took place in the state of Pennsylvania, Plaintiff and her Counsel attended via video link in Troy Michigan, and that deposition added a great deal more work for Plaintiff's Counsel in preparing for trial.

Plaintiff's Counsel's interrogation of John Molnar at his deposition called into question his credibility to the point that Defendant chose not to call him as a witness at trial in this case.

The time billed on this case by attorney Guzall is 536 hours illustrated at exhibit 3, and is less than the actual hours spent on the case, as over 100 phone calls and text messages with Omar Najor, Ms. Hubbell and other witnesses were not included within the billing, totaling an estimated additional 10 to 20 hours. It is therefore requested that this Court award attorney fees to attorney Guzall at 536 hours x $450 per hour = $241,200.00 as set forth at exhibit 3. The skill, time and labor involved in bringing this case to a very favorable decision for Plaintiff, and obtaining a

12

result at more than 8 times that of Defendant's last offer along with the case law and economic report cited herein, justifies the requested reasonable attorney fees and costs requested by attorney's Guzall and Najor.

The time billed on this case by attorney Najor is _____ hours illustrated at exhibit 9, and is less than the actual hours spent on the case, as over 50 phone calls and text messages with Raymond Guzall III, Ms. Hubbell and other witnesses were not included within the billing. It is therefore requested that this Court award attorney fees to attorney Najor at _____ hours x $250 per hour = $_____.00 as set forth at exhibit 9.

### (3) the amount in question and the results achieved

Defendant's offer to settle Plaintiff's case was $60,000.00 at facilitation with this Court. Plaintiff's last demand with the Court acting as a facilitator was $80,000.00 (which was well below Ms. Hubbell's bottom line - but she worked with the Court giving her very best attempts to reach a settlement), and prior to trial Defendant still would not settle this case for more than $60,000.00. The results achieved at trial far surpassed the Defendant's last offer of $60,000.00 as the trial verdict of $519,550.00 was over 8 and ½ times that amount.

13

## (4) the difficulty of the case

Each case poses inherent difficulties. Employment discrimination and retaliation claims are normally very fact intensive as was the case at Bar. In addition, the cases are usually very hard to prove.

Having to depose Defendant's late added witness John Molnar within **23 days** prior to the trial also posed a great difficulty that had to be overcome with cross examination to at least neutralize an attempt by Defendant to make a final attempt to obtain favorable testimony, where none existed up to that point. Such was an extreme burden as Plaintiff's Counsel had to spend many hours preparing for the deposition of John Molnar, instead of preparing for trial based upon all of the evidence *obtained up to that point in time* (23 days prior to trial). Plaintiff's Counsel had a short time to prepare for the deposition of John Molnar, yet Defendant had over one year to take his deposition. From Plaintiff's perspective, Defendant purposely put up road blocks and hurdles, improperly so, and yet Plaintiff was still able to prevail with better than a very good result at trial.

## (5) the expenses incurred

Plaintiff incurred costs in the amount of $9,180.78. (Exhibit 5). The

14

amount of costs are illustrative of the hard fought and lengthy litigation in this case.

**(6) the nature and length of the professional relationship with the client**

Attorney Guzall nor attorney Najor represented Plaintiff prior to this case. This matter was pending before this Court since October 8, 2014. Although employment retaliation and discrimination cases may be taken upon a contingency fee basis above 1/3, this matter was taken upon a 1/3 contingency fee basis and written agreement and understanding that attorney fees above that 1/3 contingency fee may be awarded by law to the attorneys.

The Court met with Plaintiff prior to trial in this matter and facilitated the case for many hours and is aware that she declined the $60,000.00 offer of Defendant and yet she went well below her bottom line number to try to obtain a settlement in this case in her attempts to work hard at settling her case, even though she did not want to go below $150,000.00 as a settlement demand. This Court advised Plaintiff and her Counsel of many cases being tried and settlements in other similar cases before this Court as not being over $50,000.00, and one similar case netting

15

approximately $8,000.00 at trial, and thus Plaintiff being fully aware of the

risks involved, Plaintiff proceeded to trial in this case and Plaintiff's

Counsel did not abandon their Client. This is an additional factor which

should be weighed by this Court in determining the award of attorney fees

in this case. The Court is aware that Plaintiff's Counsel worked very, very

hard to obtain the best result for Ms. Hubbell, and worked very hard in

attempting to settle her case.

### A.    State Bar of Michigan Summary Report as to billing rates

The State Bar of Michigan indicates within their 2014 Economics

Summary Report at exhibit 7, page 6 a fee of $450 per hour for

"employment law (plaintiff)" in the year 2013, and at page 8 a fee of $500

for Oakland County for the year 2013 - the location of Mr. Guzall's office

and Mr. Najor's office, and at page 9 a fee of $500 for Wayne County in the

year 2013, all of which are amounts at the 95th percentile. The median

rates in 2013 were listed at $250.00 per hour. *Id.*

Attorney Guzall is a solo practitioner working outside of his home at

his office located at 31555 West Fourteen Mile Road, Suite 320,

Farmington Hills, Michigan. The State Bar of Michigan indicates within

their 2014 Economic Survey at page 3 that a solo practitioner in the 95th

16

percentile earned $325,000.00 per year.  As the above outline herein

illustrates, attorney Guzall earned an average over $325,000.00 per year

over the past 3 years supporting that this Court could award attorney

Guzall attorney fees at the rate of $500.00 per hour.  (Ex. 7, p. 8 and p. 9).

Attorney Najor is a solo practitioner working outside of his home at

his office located at 24901 Northwestern Hwy., Suite 311, Southfield,

Michigan.  Attorney Najor is requesting to be awarded the median rate of

$250.00 per hour on this type of case.  (Exhibit 7, p. 8 and p. 9).

### B.    The law allows and supports the attorney fees requested

In support of Plaintiff's attorney's billing, the following law is

supporting and applicable:

> "Although plaintiff's counsel did not list exactly what she was
> doing with regard to her "trial" and "trial prep" submissions, ...
> lawyers generally know what other lawyers do during "trial" and
> "trial prep"—review the pleadings, review discovery responses,
> read depositions, prepare experts, prepare lay witnesses,
> prepare for cross-examinations, prepare opening and closing
> arguments, prepare exhibits, attend the trial, and so forth. The
> list is quite extensive but well known, i.e., there are no
> surprises.... It would be unreasonable to force lawyers, who do
> not even know if they will be entitled to case evaluation
> sanctions at the time they are preparing for and attending the
> trial, to record exactly what they were doing at every "billable"
> moment. And, it is unnecessary. The trial court can certainly
> consider the type of case, the length of the trial, the difficulty of
> the case, the numbers and types of witnesses, as well as other
> relevant factors, and determine what services were

17

necessitated by the rejection of the case evaluation. We refuse to require an exhaustive and detailed list of the precise service provided at every moment." *McNeel v. Farm Bureau General Ins. Co. of Michigan*, 289 Mich.App. 76, 102; 795 N.W.2d 205 (2010), citation omitted.

Plaintiff's Counsel will add those additional items under "trial prep" within the billing statements if this Court requires upon request, however they contain other items such as preparation for Plaintiff and Defense witnesses at trial, opening and closing argument preparation, legal research and the like. Further, the Michigan Supreme Court in a 2008 case indicated where a trial court should begin the analysis:

"We conclude that our current multifactor approach needs some fine-tuning. We hold that a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services, i.e., factor 3 under MRPC 1.5(a). In determining this number, the court should use reliable surveys or other credible evidence of the legal market. This number should be multiplied by the reasonable number of hours expended in the case (factor 1 under MRPC 1.5[a] and factor 2 under *Wood* ). The number produced by this calculation should serve as the starting point for calculating a reasonable attorney fee. We believe that having the trial court consider these two factors first will lead to greater consistency in awards. Thereafter, the court should consider the remaining *Wood*/MRPC factors to determine whether an up or down adjustment is appropriate. And, in order to aid appellate review, a trial court should briefly discuss its view of the remaining factors." *Smith v. Khouri*, 481 Mich. 519, 530-531; 751 N.W.2d 472.

A contingency fee agreement does not preclude an award of attorney

18

fees as requested in the case at bar:

> "In our view, the Michigan Legislature intended to accomplish
> two purposes in enacting the attorney fee provision of the
> Elliott-Larsen Civil Rights Act. First, attorney fee awards are
> intended to encourage persons deprived of their civil rights to
> seek legal redress as well as to ensure victims of employment
> discrimination access to the courts. *Seals v. Henry Ford*
> *Hospital,* 123 Mich.App. 329, 340, 333 N.W.2d 272 (1983). See
> also *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76
> L.Ed.2d 40 (1983) (interpreting the right to attorney fees in a
> civil rights action brought under 42 U.S.C. § 1983). A *308
> second purpose in allowing attorney fee recovery under the
> Elliott-Larsen Civil Rights Act is to obtain compliance with the
> goals of the act and thereby deter discrimination in the work
> force." *King v Gen Motors Corp*, 136 Mich App 301, 307-08;
> 356 NW2d 626, 629 (1984).

*    *    *

> "The trial court in this case improperly determined that the
> availability of contingent fee arrangements for Elliott-Larsen
> plaintiffs should automatically preclude an award of attorney
> fees. We thus remand to the trial court for reconsideration of
> plaintiff's motion for attorney fees in light of the Legislature's
> intent to encourage judicial resolution of employment
> discrimination conflicts and to discourage employment
> discrimination in general." *Id.*, at 308.

*    *    *

> "A contingency arrangement is only one of the factors to be
> considered." *Id.*, at 308.

As to the award of attorney fees, State law is generally applied in a

case such as Ms. Hubbell's.  See, *Aleyeska Pipeline Serv. Co. v.*

19

*Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975). Attorney fees are

awarded as shown below, where the court awarded attorney fees, costs

and interest in the amount of approximately $250,000.00 on a verdict of

$185,000.00:

> "Following jury trial, the United States District Court for the
> Southern District of Ohio, Herman J. Weber, Senior District
> Judge, entered judgment in favor of employee on his retaliation
> claims, awarding him $185,000.00 in compensatory damages
> and approximately $250,000.00 more in attorneys fees, costs,
> and prejudgment interest, and subsequently denied defendants'
> renewed motion for judgment as a matter of law, 2006 WL
> 3253070." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531
> (6th Cir. 2008).

In addition, a reduction of the requested attorney fees here is not

appropriate where one cause of action did not net an award, in particular

as to discrimination and retaliation cases, as the law illustrates:

> "We have "repeatedly rejected mechanical reductions in fees
> based on the number of issues on which a plaintiff has
> prevailed." Deja Vu of Nashville v. Metro. Gov't of Nashville and
> Davidson County, 421 F.3d 417, 423 (6th Cir.2005). "Litigants
> in good faith may raise alternative legal grounds for a desired
> outcome, and the court's rejection of or failure to reach certain
> grounds is not a sufficient reason for reducing the fee. **The
> result is what matters**." *Imwalle, supra,* at 554, m.

> "This court has in fact held that **discrimination and retaliation
> claims are related for the purpose of awarding attorney
> fees**. Lilley v. BTM Corp., 958 F.2d 746, 756 (6th Cir.1992)
> (holding that the district court could **not** properly reduce the
> attorney-fee award for time spent on the plaintiff's unsuccessful

age-discrimination claim because it was related to the plaintiff's
successful retaliation claim (citing Hensley, 461 U.S. at 437,
103 S.Ct. 1933))." *Imwalle, supra,* at 553, emphasis added.

Further, the attorney fees requested here cannot be reduced based

upon multiple attorney's working on the case:

> However, the court found that Plaintiffs had presented
> "extensive and detailed documentation of their hours," which
> contained "sufficient detail and probative value to enable" the
> court to make the factual determinations that "the hours
> recorded were actually and reasonably expended in this
> action." Sept. 29, 2014 Op., at 6. It reiterated that "although
> multiple attorneys worked on these cases," that was "no[t]
> inherently unreasonable," and that "[t]he time records submitted
> in these cases" were sufficiently detailed and established
> proper billing judgment. Id. at 8-9. In light of Plaintiffs' extensive
> documentation, the court found that Defendants' conclusory
> allegations that fees were unwarranted did not establish that
> there was error. Id. at 9.
> Multiple-lawyer litigation is common and not inherently
> unreasonable."
> *The Ne. Ohio Coal. for the Homeless v. Husted,* 831 F.3d 686,
> 704 (6th Cir. 2016), cites omitted.

Furthermore, travel time and conferencing are deemed proper and

compensable. *The Ne. Ohio Coal. for the Homeless, supra,* at 706.

Further, all billable hours went to the judgment in this case, as Plaintiff

could not receive additional monies if she prevailed upon her gender

discrimination claim versus her retaliation claims, and therefore there

should be no reduction in the billing upon that basis, and in accord with

21

*Imwalle, supra.*, at 533.  Also, Plaintiff could not proceed upon her retaliation claims without proffering evidence as to her gender discrimination claim, as her retaliation claims were based upon her complaints of gender discrimination and her prior complaints of retaliation.

## III.    Judgment Interest is applicable

"In light of the plain language and the absence of legislative intent to the contrary, we conclude that postjudgment interest properly runs from the date of the entry of judgment." *Kaiser Aluminum & Chem. Corp., supra*, 494 U.S. 827, at 835.  Further, MCL 600.6013 mandates interest on a judgment, attorney fees and costs.  The judgment against Defendant here is $519,550.00.

Pursuant to MCL 600.6013, the interest rates to be applied are detailed at exhibit 2 attached hereto.  The interest on the judgment is compounded annually, and the total judgment in this case with interest equates to $555,803.89 through June 30, 2017 and will continue to accrue interest at the rates set forth in the future until paid in full by Defendant. Plaintiff's Counsel Guzall emailed Defense Counsel at 10:51 am on June 22, 2017 in attempt to settle the issues herein prior to additional court intervention.  Defense Counsel did not respond.  Plaintiff is therefore

22

forced to file this Motion and requests the relief as set forth within her Motion.

NOTE: Attorney Omar Najor will be filing a supplement with the Court (being exhibit 9, his billing for attorney fees he is requesting, and exhibit 10 his affidavit) within 7 days as his power went out at his office for a few days which has delayed him in finalizing his billing. In addition, attorney Guzall will be out of town until next week, and in attempt to represent Ms. Hubbell's interests in a timely fashion, this Motion has been filed with the Court at this time.

Respectfully submitted,
RAYMOND GUZALL III, P.C.

/s/Raymond Guzall III
RAYMOND GUZALL III (P60980)
Attorney for Plaintiff
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, MI 48334
Phone (248) 702-6122

/s/Omar Najor
Omar Najor
Attorney for Plaintiff
24901 Northwestern Hwy., Suite 311,
Southfield, Michigan

23

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification of such filing to the attorneys of record and I hereby certify that there are no manual recipients on the Notice List.

/s/ Raymond Guzall III
Raymond Guzall III  (P60980)

Attorney for Plaintiff
31555 W. Fourteen Mile Rd., Suite 320
Farmington Hills, Michigan 48334
Phone:       (248) 702-6122
Fax:          (248) 702-6124
Rayguzall@attorneyguzall.com

## INDEX OF EXHIBITS FOR
## PLAINTIFF'S MOTION FOR ENTRY OF JUDGEMENT, COSTS, ATTORNEY FEES AND INTEREST

Exhibit 1 - Jury Verdict

Exhibit 2 - Interest calculations

Exhibit 3 - Attorney fees of Raymond Guzall III

Exhibit 4 - Transcript of $300.00 attorney fee to attorney Guzall in 2011

Exhibit 5 - Costs

Exhibit 6 - Affidavit of Raymond Guzall III

Exhibit 7 - State Bar of Michigan 2014 Summary Report as to billing rates

Exhibit 8 - October 27, 2010 letter, Million Dollar Advocates Forum

Exhibit 9 - Attorney fees of Omar Najor (To be supplemented/provided by Mr. Najor within 7 days)

Exhibit 10 - Affidavit of Omar Najor  (To be supplemented/provided by Mr. Najor within 7 days)