UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL HUBBELL,

        Plaintiff,

v.

        Case No. 14-13897
        HON. GEORGE CARAM STEEH

FEDEX SMARTPOST, INC.,

        Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW AND RULE 59 MOTION FOR NEW TRIAL AND/OR REMITTITUR (DOC. 85)

Plaintiff Sheryl Hubbell brought this action against defendant FedEx Smartpost, Inc., alleging that she was subjected to gender discrimination and retaliation. On June 9, 2017, the jury returned a verdict in favor of plaintiff on her retaliation claims and awarded compensatory and punitive damages. The jury found for defendant on the gender discrimination claims. This matter is presently before the Court on defendant's motion for judgment as a matter of law or, in the alternative, for a new trial and/or remittitur. (Doc. 85). For the reasons stated below, defendant's motion is granted in part and denied in part.

## I. Background

On October 8, 2014, Plaintiff filed a complaint against defendant in federal court. (Doc. 1). She alleged gender discrimination, retaliation, and hostile work environment claims under Title VII. Plaintiff later amended her complaint to include a second retaliation claim. (Doc. 15). The Court granted summary judgment for defendant on plaintiff's hostile work environment claim. (Doc. 32).

In 2016, plaintiff filed a second lawsuit against defendant in Wayne County Circuit Court. Plaintiff relied on the same facts to allege gender discrimination, retaliation, and hostile work environment in violation of Michigan's Elliott Larsen Civil Rights Act. Defendant removed the civil action to federal court, where it was consolidated with the instant case. (Doc. 35).

On June 5, 2017, a jury trial commenced on five of plaintiff's claims; gender discrimination and two counts of retaliation in violation of Title VII, and gender discrimination and retaliation in violation of the ELCRA. Defendant made an oral motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 at the end of plaintiff's proofs on June 7, 2017. Defendant renewed this motion on June 9, 2017, before the case was submitted to the jury. The Court took the motions under advisement. On the

same day, the jury returned a verdict in favor of defendant on the gender discrimination claims and in favor of plaintiff on the retaliation claims. The jury awarded plaintiff $32,100 for economic damages to the date of the verdict, $53,500 for future economic damages, $30,000 for non-economic damages, and $403,950 for punitive damages.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 50(b), when ruling on a judgment as a matter of law, the Court may allow the verdict to stand, order a new trial, or direct entry of judgment as a matter of law. Fed. R. Civ. P. 50(b). When evaluating a Rule 50(b) motion, the evidence should not be weighed, and the credibility of the witnesses should not be questioned. *Conwood Co. L.P. v. United States Tobacco Co.*, 290 F.3d 768, 781 (6th Cir. 2002). Judgment as a matter of law "may be granted only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Gray v. Toshiba Am. Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001). "Thus, while the district court has the duty to intervene in appropriate cases, the jury's verdict should not be disturbed simply because different inferences and conclusions could have been drawn or because other results are more

reasonable." *Wheaton v. N. Oakland Med. Ctr.*, No. 00-74656, 2006 WL 44163, at *2 (E.D. Mich. Jan. 6, 2006).

Pursuant to Fed. R. Civ. P. 59(a), a new trial may be granted "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a).

### III. Analysis

**A. Judgment as a Matter of Law**

Having considered the entire record, the Court finds that there was sufficient evidence for the jury's verdict for plaintiff on her retaliation claims. Plaintiff presented evidence regarding her treatment at FedEx and asserted that she was unfairly disciplined and prohibited from clocking in with other employees after filing an E.E.O.C. complaint. Viewed in the light most favorable to plaintiff, the Court is unable to find that there is no genuine issue of material fact or that reasonable minds could only conclude in favor of defendant. Defendant's request for judgment as a matter of law on plaintiff's retaliation claims is DENIED.

The Court further finds that plaintiff presented sufficient evidence to support a jury verdict imposing punitive damages. A jury may award punitive damages in a discrimination case "if the complaining party

demonstrates that the respondent engaged in a discriminatory practice . . . with malice or with reckless indifference to [her] federally protected rights." 42 U.S.C. § 1981a(b)(1). "The terms 'malice' and 'reckless indifference' pertain not to the employer's awareness that it is engaging in discrimination, but to its knowledge that it may be acting in violation of federal law." *Kolstad v. American Dental Assoc.*, 527 U.S. 526, 527 (1999). "This standard requires a plaintiff to prove more than merely intentional discrimination." *White v. Burlington Northern & Santa Fe Railway Co.*, 364 F.3d 789, 808 (6th Cir. 2004). *See also Beya v. Hoxworth Blood Ctr.*, No. 97-4028, 97-4170, 97-4173, 97-4177, 1991 WL 137625, at *3 (6th Cir. Mar. 3, 1999) (stating that the Sixth Circuit "has repeatedly recognized that the punitive damages standard is higher than the general standards for liability for discrimination or retaliation."). A plaintiff may demonstrate the requisite mental state by showing that "the relevant individuals knew of or were familiar with the anti-discrimination laws and the employer's practices for implementing those laws" and discriminated despite that knowledge, or that "defendant's employees lied, either to the plaintiff or to the jury, in order to cover up their discriminatory actions." *Hall v. Consolidated Freightways Corp. of Delaware*, 337 F.3d 669, 675 (6th Cir. 2003).

An employer, however, may not be vicariously liable for intentional violations of Title VII when the violations are contrary to the employer's good-faith efforts to comply with Title VII. *Kolstad*, 527 U.S. at 545-46. To determine whether an employer engaged in good faith efforts to comply with Title VII, the court focuses "both on whether the defendant employer had a written . . . policy and whether the employer effectively publicized and enforced its policy." *Parker v. General Extrusions, Inc.* 491 F.3d 596 603 (6th Cir. 2007). "[T]he mere existence of a written anti-discrimination alone does not shield the company from punitive damages." *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 532 (6th Cir. 2005). "Rather, the employer must demonstrate that it engaged in good faith efforts to implement the policy." *Hall*, 337 F.3d at 675.

Defendant presented evidence regarding its anti-discrimination policy and training. But, as plaintiff asserts, defendant must effectively enforce its policies. Plaintiff argued that, despite the existence of FedEx's policy and employees' knowledge of it, defendant did not investigate or report plaintiff's complaint. Indeed, at trial defendant's witnesses testified regarding their knowledge of FedEx's rules against gender discrimination and compliance training. But defendant did not specify how it handled plaintiff's complaints. Defendant therefore failed to establish that a

reasonable juror could not conclude that defendant failed to demonstrate that it engaged in good faith efforts to implement the policy. As such, the employer good faith compliance defense discussed in *Kolstad* does not apply here.

Defendant also argues that its anti-discrimination policy and training "was the exact opposite of reckless disregard for federal anti-discrimination law," (Doc. 86 at PageID 3741), and therefore, plaintiff's alleged conduct, even if true, could not support punitive damages. The Court is unable to agree. As stated above, defendant failed to establish that it effectively enforced its anti-discrimination policy when responding to plaintiff's complaints. Viewing this, and plaintiff's additional evidence of retaliatory conduct, in the light most favorable to plaintiff, the Court is unable to conclude that there is no genuine issue of material fact for the jury and reasonable minds could only conclude in favor of defendant. Defendant's request for judgment as a matter of law on plaintiff's claim for punitive damages is DENIED.

**B. New Trial**

"Generally courts have interpreted [Rule 59] to mean that a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2)

the damages being excessive; or (3) the trial being unfair to the moving party in some fashion." *Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1045-46 (6th Cir. 1996) (internal citations omitted). Further, "obvious and prejudicial error in instructing the jury constitutes grounds for a new trial [.]" *Fryman v. Federal Crop Ins. Corp.,* 936 F.2d 244, 248 (6th Cir.1991). Federal Rule of Civil Procedure 61 "makes clear that the court must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." *Clark v. Esser*, 907 F. Supp. 1069, 1073 (E.D. Mich. 1995). Rule 61 states that "unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial. . . ." Fed. R. Civ. P. 61. "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." *Id.* In other words, the court must "ignore errors that do not affect the essential fairness of a trial." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 548 (1984).

Defendant first contends that it is entitled to a new trial based on deficiencies in the jury instructions regarding punitive damages. The jury instructions did not reflect the difference between Title VII, which permits punitive damages subject to a mandatory statutory cap, and the ELCRA,

which does not permit punitive damages. The instructions, however, did not state that punitive damages were available for violations of state law. The specific language, as agreed to by defendant, stated that jurors "may award punitive damages if Plaintiff Hubbell proves, by a preponderance of the evidence, that Defendant FedEx engaged in discrimination or retaliatory practice with malice or reckless indifference to Plaintiff Hubbell's *federally protected rights*." (Doc. 71 at PageID 2627) (emphasis added). The instruction continues that jurors need only conclude that defendant "had knowledge it may be acting in violation of *federal law*" or "was aware of the risk that its actions violated *federal law*." (*Id.*) (emphasis added). The question of punitive damages was properly before the jury in light of plaintiff's federal claims. The instruction was not so obvious and prejudicial that it affected the fairness of the judicial proceedings.

Defendant also contends that it is entitled to a new trial "based on the jury's finding that [it] proved its affirmative defense that it acted in good faith." (Doc. 86 at PageID 3747). Defendant's statement refers to the jury's initial completion of the verdict form. The relevant portion of the verdict form states:

> 10. Has Defendant FedEx shown that it made a good-faith effort to comply with the law prohibiting gender discrimination?
>
> Yes _____. No _____.
>
> *Proceed to Question 11 only if you answered no to Question 10. If you answered yes to Question 10, the foreperson should sign the verdict form and return it to the Bailiff or Marshall.*
>
> 11. What amount, if any, do you award for punitive damages on Plaintiff Hubbell's claims?

The jury initially answered "Yes" to Question 10, which would nullify liability, and also answered Question 11 to award punitive damages. The Court noted this conflict and held a conference with the parties outside the presence of the jury. (Doc. 87 at PageID 3808-3815). The jury was thereafter given a curative instruction:

> The Court has received your completed verdict form, and there's a problem that we're going to have you correct.
>
> Question Number 10, answered by the verdict form yes, and the verdict form then directs you after reaching a finding on Number 10, indicates that if you answered yes to Question Number 10, the foreperson should sign the verdict form and return it to the bailiff or marshal without completing an amount of punitive damages pursuant to Question 11.
>
> So you need to take this back to the jury room, and decide Question Number 10, decide whether you have properly answered Question Number 10, in which case would you want to mark out -- obliterate

- 10 -

> the findings in Question Number 11, or if you mistakenly marked yes in Question Number 10 and that answer is revised, then presumably the amount of punitive damages you concluded should be made for you to again reconsider.
>
> So you have to look at nine and 10 -- excuse me -- 10 and 11, and decide which of those items you're revising, so that they are compatible with one another.
>
> I will return you to the jury room.

(Doc. 87 at PageID 3816). The jury returned shortly thereafter with a verdict form that answered no to Question 10 and awarded $403,950 in response to Question 11. (Doc. 87 at PageID 3820).

Defendant asserts that the Court erred in providing a curative instruction. Defendant argues that the Court should have accepted the jury's initial verdict form and interpreted it to grant judgment for defendant. When the jury initially completed the verdict form, it was not obvious that there was no genuine issue of material fact for the jury regarding Question 10 such that reasonable minds could only conclude in favor of defendant. As such, the Court did not err by providing a curative instruction to resolve the inconsistent answers to Questions 10 and 11. Furthermore, the Court's instruction is not prejudicial. It does not favor any party or convey a preference for any particular answer. Defendant's motion for a new trial is, therefore, DENIED.

**C. Remittitur**

For the reasons stated below, defendant's motion for remittitur is GRANTED.

"Under Title VII, damage awards – both compensatory and punitive – are capped, with $300,000 being the largest sum that can be awarded to a claimant against the largest employers, those with 500 or more employees." *White*, 364 F.3d at 805 (citing 42 U.S.C. § 1981a(b)(3)(D)). "The $300,000 limit is imposed on the sum of the compensatory and punitive damage awards; there is no separate limit for each type of damages." *Id.* (citing 42 U.S.C. § 1981a(b)(3)). This cap, however, "does not apply to the remedies of front pay and back pay," which are considered equitable rather than compensatory damages. *Szeinbach v. Ohio State University*, 820 F.3d 814, 820 (6th Cir. 2016).

"Front pay is 'money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement.'" *Id.* (quoting *Pollard v. E.I. du Pont de Nemours & Co.*, 5332 U.S. 843, 846 (2001)). The jury awarded plaintiff $53,500 "for economic damages that [plaintiff] will sustain in the future." (Doc. 73 at PageID 2640). This award constitutes front pay, and therefore, is not subject to the Title VII damages cap.

- 12 -

Back pay "is money awarded for lost compensation during the period between the date of the plaintiff's injury (i.e. the date on which the discriminatory course of conduct began) and the date on which damages are determined." *Szeinbach*, 820 F.3d at 820 (citing *Howe v. City of Akron*, 801 F.3d 718, 745 (6th Cir. 2015)). The jury awarded plaintiff $32,100 "for economic damages to the date of this verdict." (Doc. 73 at PageID 2640). This award constitutes back pay, and therefore, is not subject to the Title VII damages cap.

The jury also awarded plaintiff $30,000 for "non-economic damages" suffered "as a result of Defendant FedEx's actions." (Doc. 73 at PageID 2641). This "verdict was based on both federal and state law claims," and therefore, plaintiff is "entitled to elect which statute they would receive damages under." *Denhof v. City of Grand* Rapids, 494 F.3d 534, 548 (6th Cir. 2007). "Since the [ELCRA] has no damage cap, the Title VII limits do not apply" to this figure. *Id.*

Finally, the jury awarded plaintiff $403,950 in punitive damages. (Doc. 73 at PageID 2642). "[P]unitive damages are not available under the ELCRA." *Quinn v. Griffith*, 515 F. App'x 543, 551 n.7 (6th Cir. 2013) (citing *Gilbert v. DaimlerChrysler Corp.*, 470 Mich. 749 (2004)). Plaintiff may only collect a punitive damages award under Title VII. The Court, therefore,

shall reduce the punitive damages figure from $403,950 to $300,000 in order to comply with the statutory cap.

## IV. Conclusion

For the reasons stated above, defendants' motion is GRANTED IN PART AND DENIED IN PART.

Defendant's request for judgment as a matter of law on plaintiff's retaliation claims is DENIED.

Defendant's request for judgment as a matter of law on plaintiff's claim for punitive damages is DENIED.

Defendant's requests for a new trial are DENIED.

Defendant's request for remittitur is GRANTED.

IT IS SO ORDERED.

Dated: March 13, 2018

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 13, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk