UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERYL HUBBELL,

    Plaintiff,

v.

Case No. 14-13897
HON. GEORGE CARAM STEEH

FEDEX SMARTPOST, INC.,

    Defendant.
_____/

OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S MOTION FOR ENTRY OF
JUDGMENT, COSTS, ATTORNEY'S FEES AND INTEREST (DOC. 76)

Plaintiff Sheryl Hubbell brought this action against defendant FedEx Smartpost, Inc., alleging that she was subjected to gender discrimination and retaliation. On June 9, 2017, the jury returned a verdict in favor of plaintiff on her retaliation claims and awarded damages. This matter is presently before the Court on plaintiff's motion for entry of judgment, costs, attorney fees, and interest. (Doc. 76).

## I. Background

The facts of the case are well known to the parties. A brief summary will suffice here. Plaintiff worked as a parcel sorter for defendant.

She alleged gender discrimination, retaliation, and hostile work environment claims under Title VII and Michigan's Elliott-Larsen Civil Rights Act (ELCRA). The Court granted defendant partial summary judgment on plaintiff's hostile work environment claim. On June 5, 2017, the parties proceeded to trial on the remaining counts. After a five day trial, the jury found for plaintiff on her retaliation claims. (Doc. 73). The jury awarded her $32,100 for economic damages to the date of the verdict, $53,500 for future economic damages, $30,000 for non-economic damages, and $403,950 for punitive damages. (Doc. 73 at PageID 2640-42). Defendant immediately stated its intent to file post-trial motions. Plaintiff filed the instant motion on June 22, 2017. The Court resolved to address defendant's anticipated post-trial motions before entering judgment. On March 13, 2018, the Court denied defendant's requests for judgment as a matter of law and a new trial and granted its request for remittitur and reduced plaintiff's punitive damages award. (Doc. 90). Judgment was entered March 14, 2018. (Doc. 91).

The Court now returns to plaintiff's motion. She seeks attorney's fees, costs, and interest. Defendant filed a response on July 11, 2017. (Doc. 78). It focused on requesting that judgment not be entered. It did not articulate any challenge to plaintiff's requests for attorney's fees, costs, or interest.

## II. Judgment

Judgment was entered on March 14, 2018. (Doc. 91). Plaintiff's request for judgment is, therefore, MOOT.

## III. Attorney's Fees

Section 706(k) of Title VII of the Civil Rights Act of 1964 authorizes the award of attorney's fees to the prevailing party and entrusts the effectuation of this statutory policy to the discretion of the district courts. *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 416 (1978). The ELCRA also authorizes "[a] person alleging a violation of this act" to receive reasonable attorney's fees. Mich. Comp. Laws §§ 37.2801(1), (3); *see also Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751, 764 (E.D. Mich. 1998).

In her motion for attorney's fees, plaintiff's counsel states that "this matter was taken upon a 1/3 contingency fee basis and written agreement and understanding that attorney fees above that 1/3 contingency fee may be awarded by law *to the attorneys*." (Doc. 76 at PageID 2669) (emphasis added). Preliminarily, the Court reminds plaintiff and her counsel that the law entitles plaintiff, not her attorneys, to attorney's fees.

"Prevailing party" in Title VII's fee shifting provision "refer[s] to plaintiff's entitlement to those fees, not the plaintiff's lawyer, . . .

independent of his client, an attorney has no personal right to an award of statutory attorney's fees under 42 U.S.C. § 2000e-5(k)." *Soliman v. Ebasco Servs. Inc.*, 822 F.2d 320, 322-23 (2d Cir. 1987). Likewise, plaintiff, not her counsel, is the "person alleging a violation of" the ELCRA. Any attorney's fees award is, therefore, awarded by law to *plaintiff Hubbell*.

"When determining an amount of a reasonable attorney's fee, federal courts generally begin by calculating the 'lodestar' (the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate), and then reduce or augment that amount by considering other case-specific factors." *Hunt v. Hadden,* 159 F. Supp. 3d 800, 806 (E.D. Mich. 2016) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983)). Michigan courts follow a similar approach; first determining the lodestar and then assessing the factors outlined in *Wood v. DAIIE*, 413 Mich. 573 (1982) and Michigan Rule of Professional Conduct 1.5(a) to determine if they warrant an increase or decrease in the base number. *Id.* "The factors considered in *Wood* are:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client.

*Id.* (citing *Wood*, 413 Mich. at 588). "The factors in Professional Conduct Rule 1.5(a) are largely the same. Those factors are not exclusive, and 'courts should consider any additional relevant factors.'" *Id.* (quoting *Smith v. Khouri*, 481 Mich. 519, 530 (2008)).

**A. Hourly Rate**

The party seeking attorney's fees bears the burden of establishing a reasonable hourly rate. *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 848 (6th Cir.2013). A reasonable hourly rate is generally defined by reference to the "prevailing market rates in the relevant community." *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). "[T]he 'relevant community' for fee purposes" is "the legal community within that court's territorial jurisdiction. . . ." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000). As such, the applicable prevailing market rate is that which lawyers of comparable skill and experience in the Eastern District of Michigan "normally charge their paying clients for the type of work in question." *Smith*, 481 Mich. at 531. The appropriate rate, however, "is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 618 (6th Cir. 2007). "The attorney should submit his own affidavit documenting his skill, experience, and reputation . .

. and that should be augmented by additional data." *Hunt*, 159 F. Supp. 3d at 806-807. "The State Bar of Michigan, as well as other private entities, can provide a valuable service by regularly publishing studies on the prevailing market rates for legal services in this state." *Smith*, 481 Mich. at 531.

Plaintiff argues that her counsel, Ray Guzall and Omar Najor, are entitled to hourly rates of $450 and $250, respectively. Attorney Ray Guzall asserts that he should be awarded rates in the 95th percentile of attorneys with offices in Oakland County that represent plaintiffs in employment law cases. Guzall began practicing law in 2000. He is a sole practitioner with an office outside of his home. His Farmington Hills office is located in Oakland County. Plaintiff's motion recounts Guzall's history negotiating six-figure settlement awards and obtaining jury verdicts in excess of $1 million in 2004 and 2011. In the latter case, the presiding Wayne County Circuit Court judge awarded Guzall attorney's fees at an hourly rate of $300.

Attorney Omar Najor began practicing law in 1998. He is a sole practitioner with an office outside of his home. His Southfield office is located in Oakland County. Plaintiff's motion states that Najor has nearly three years of experience working with Guzall and previously worked as a case evaluator for the Oakland County Bar Association.

According to the most recent survey from the State Bar of Michigan, attorneys with 16 – 25 years of experience charged rates of $269 at the median, $291 at the mean, $350 at the 75th percentile, and $488 at the 95th percentile. State Bar of Michigan, Economics of Law Practice (2014), http://www.michbar.org/file/pmrc/articles/0000151.pdf.[1] Attorneys with an office in Oakland County (south of M-59) charged hourly rates of $250 at the median, $280 at the mean, $325 at the 75th percentile, and $495 at the 95th percentile. *Id.* Attorneys in a firm with a single attorney, like Guzall and Najor, charged hourly rates of $210 at the median, $222 at the mean, $250 at the 75th percentile, and $375 at the 95th percentile. *Id.* Sole practitioners with an office outside of their home charged hourly rates of $225 at the median, $231 at the mean, $250 at the 75th percentile, and $383 at the 95th percentile. *Id.* Attorneys who represent plaintiffs in employment law cases charged hourly rates of $250 at the median, $274 at the mean, $330 at the 75th percentile, and $450 at the 95th percentile. *Id.*

Najor's requested rate of $250 per hour is reasonable in light of his experience and role as a sole practitioner in the Eastern District of Michigan. Guzall's request, however, is not. Guzall's relevant experience must be balanced with the size of his office. For example, as a sole

---

[1] This document is attached to plaintiff's motion as exhibit 7, (Doc 76-8).

practitioner, Guzall bills for several hours of legal work, including research and discovery, which, in larger offices, is often assigned to associates or legal assistants who command much lower rates. In short, Guzall bills for legal work that "could not likely command the requested $450-per-hour from fee-paying clients." *Mendez v. FedEx Express*, No. 15-CV-12301, 2017 WL 168168, at *3 (E.D. Mich. Jan. 17, 2017). Evaluating Guzall's experience, years in practice, and office size and location, the Court concludes that $325 is a reasonable hourly rate. Moreover, this amount is reasonable in light of Guzall's prior attorney's fee award that determined $300 to be a reasonably hourly rate. (Doc. 76-5 at PageID 2722).

**B. Reasonable Hours Expended**

Plaintiff's motion asserts that Guzall spent 536 hours on this case while Najor spent 348.583 hours. Plaintiff's assertion does not represent accurate sums of each of the entries in Guzall's affidavit. The Court's calculations reveal that Guzall's entries total 540.75 hours. For the reasons stated below, the Court finds that reductions are warranted.

Guzall and Najor billed the vast majority of their time in quarter hour increments. Guzall's billing information contains 259 data entries. 199 entries are billed in quarter hour increments. 126 of the 199 entries billed in quarter-hour increments are rounded to a half or full hour. The 60

remaining entries bill in smaller units of time. 47 of these 60 entries bill for small increments of time spent solely on emails and "communication." The vast majority of these entries bill for 5 minutes, while about a dozen bill for 10 minutes, and a handful bill for 20 minutes. The final 13 entries billed in smaller units of time include a variety of tasks such as reviewing defendant's pleadings, attending depositions, and reading Court orders.

Najor's billing information contains 202 data entries. 132 are billed in quarter hour increments. 96 of the 132 entries billed in quarter hour increments are rounded to a half or full hour. 70 entries are billed in smaller units of time. 63 of these 70 entries bill for small increments of time spent solely on emails and "communication." The majority of these entries bill for 5 minutes, while about a third bill for 10 minutes, and a handful bill for 20 minutes. The final seven entries billed in smaller increments correspond to a variety of tasks including reviewing defendant's pleadings, attending depositions, and reading court orders.

A court has discretion to discount for the use of quarter-hour billing increments. *See Yellowbook*, 708 F.3d at 849. This discretion arose from concern that quarter-hour increments result in over-billing. *Id.* "Quarter-hour billing," however, "cannot mathematically warrant a fee reduction greater than 60% relative to tenth-of-an-hour billing. . . ." *Id.* The Sixth Circuit stated

that, "in most cases district courts should apply much lower percentage reductions" because "the purpose is to counter over-billing, not to punish the failure to use tenth-of-an-hour billing." *Id.*

Here, approximately 77 percent of Guzall's time entries and 65 percent of Najor's time entries bill in quarter-hour increments. The majority of these quarter-hour increment entries are rounded to a half or full hour. Most of the entries corresponding to vague work descriptions like deposition preparation, drafting, and trial prep, are rounded to the full hour without any further detail of how those hours were spent. *See e.g.,* (Doc. 76-4 at PageID 2701) (billing 4.0 hours for "preparation for Vivian Carrey's deposition); (Doc. 76-4 at PageID 2702) (billing "9.0 hours for "Draft of Response to Defendant's MSJ"); (Doc. 76-4 at PageID 2710) (billing 8.5 hours for "Molnar dep. prep., trial prep."). The Court will therefore impose an across-the-board reduction of five percent to Guzall and Najor's hours. This reduction is "sufficient to counter the likelihood that some hours involved rounding that led to slight over-billing while others did not." *Kelmendi v. Detroit Bd. Of Educ.*, 2017 WL 1502626, at *21 (E.D. Mich. Apr. 27, 2017).

Much of Guzall's and Najor's time appears to be redundant. For example, they both billed a significant amount of time preparing for

depositions, responding to defendant's motion for summary judgment, working on motions in limine and preparing for trial. *See Hensley*, 461 U.S. at 434 (holding that hours that are "excessive, redundant, or otherwise unnecessary" are not reasonably expendable). Plaintiff offers no explanation for why Guzall and Najor both needed to work on these tasks. Plaintiff's motion suggests that Guzall was the lead attorney. But plaintiff offers no explanation for why Guzall required Najor's assistance and why Najor's additional time on these matters is reasonable. *See id.* ("[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.").

Moreover, it is difficult for the Court to know precisely how much time was redundant or unnecessary. Guzall and Najor block-billed their time entries, so there is no way to know how much time was reasonably spent on discrete tasks. *See e.g.,* (Doc. 77 at PageID 2784) ("12-16-16 Review emails b/w Ray and Def. Counsel, Motion in Limine, JFPTO, exhibits, and trial prep/transcript review (Hubbell) (3 hours)"). "[T]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Imwalle v. Reliance Med. Products, Inc.*, 515

F.3d 531 (6th Cir. 2008) (quoting *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984)). Thus, "[c]ourts in this circuit have reduced attorney fees on the basis of insufficient billing descriptions where . . . billing records lumped together time entries under one total so that it was impossible to determine the amount of time spent on each task." *Id.* (internal citations omitted); *see also Bell v. Prefix, Inc.*, 784 F. Supp. 2d 778, 787 (E.D. Mich. 2011) ("In the Sixth Circuit, the law is clear that significant reductions in time are appropriate where block billing is used").

Finally, many of Guzall's and Najor's entries are too vague for the Court to determine whether the hours were reasonably expended. *See Imwalle*, 515 F.3d at 553. For instance, the majority of both attorneys entries concern "email[s]" and "communication[s]." *See e.g.,* (Doc. 77 at PageID 2776). "Understandably time records submitted to the Court cannot reveal client confidences, but some further context would be necessary to ensure that the time was reasonable." *Kelmendi*, 2017 WL 1502626, at *23. Additional entries are overly broad. For example, Guzall bills for "document review," "review of Court's order," and "trial prep." *See e.g.,* (Doc. 76-4 at PageID 2696, 2705, 2708). Najor bills for "review of motions," "review of transcripts," and "trial prep." *See e.g.,* (Doc. 77 at PageID 2781, 2785,

2787). These entries are not specific enough for the Court to determine exactly what Guzall and Najor did and whether that time was reasonable.

In sum, it is difficult for the Court to determine what discrete tasks each attorney completed, how much time they spent on each task, and whether their time is redundant. Without being able to determine whether Guzall's and Najor's time was reasonably expended, the Court finds that an additional 35% reduction in their hours is appropriate.

**C. Wood Factors**

The *Wood* factors do not warrant any adjustment of the lodestar. The Court considered the professional standing and experience of the attorneys in its assessment of a reasonable hourly fee. Plaintiff prevailed on her retaliation claims alone and ultimately collected a $415,600 judgment. While these results are favorable, they are not so unique that an increase is warranted. This was a run-of-the mill discrimination, retaliation, and hostile work environment case that spanned roughly three and a half years. As such, no increase is warranted under the remaining *Wood* factors.

**D. Award**

For the reasons stated above, the Court awards plaintiff $157,733.75. This figure represents 324.45 hours, at an hourly rate of $325, for Guzall's work and 209.15 hours, at an hourly rate of $250, for Najor's work.

**IV. Costs**

Pursuant to Federal Rule of Civil Procedure 54(d), "costs . . . should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). To recover costs other than attorney's fees, however, a prevailing plaintiff must apply to the Clerk of Court, and then to the Court if they are not satisfied with the Clerk's decision. *Hunt*, 159 F. Supp. 3d at 8110 (citing Fed. R. Civ. P. 54(d)(1)). In this district, "the [c]lerk will tax costs under Fed. R. Civ. P. 54(d)(1) as provided in the Bill of Costs Handbook available from the clerk's office and the Court's web site." E.D. Mich. LR 54.1.

There is no record of plaintiff filing a bill of costs with the Clerk of Court, or any ensuing decision by the Clerk. The Court shall, therefore, DENY plaintiff's request for costs without prejudice.

**V. Interest**

Plaintiff also requests interest pursuant to Michigan Compiled Laws § 600.6013. Defendant's response brief did not address interest. The statute, governing pre-judgment interest, provides that:

> interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section.

> Interest under this subsection is calculated on the entire amount of the money judgment, including attorney fees and other costs. . . . The amount of interest attributable to that part of the money judgment from which attorney fees are paid is retained by the plaintiff, and not paid to the plaintiff's attorney.

Mich. Comp. Laws § 600.6013(8).

Plaintiff's complaint was filed on October 8, 2014. The average interest rates paid at auctions of 5-year United States treasury notes for the relevant time periods are stated below. Michigan Dept. of Treasury, *Interest Rates for Money Judgments*, MICHIGAN.GOV (Jan. 1, 2018), http://www.michigan.gov/treasury/0,4679,7-121-44402_44404-107013--,00.html (last visited Feb. 12, 2017).

| Time Period | Interest Rate |
|:---:|:---:|
| 7/1/2014 | 1.622% |
| 1/1/2015 | 1.678% |
| 7/1/2015 | 1.468% |
| 1/1/2016 | 1.571% |
| 7/1/2016 | 1.337% |
| 1/1/2017 | 1.426% |
| 7/1/2017 | 1.902% |
| 1/1/2018 | 1.984% |

Plaintiff's judgment currently amounts to $573,333.75; $415,600 in damages and $157,733.75 in attorney's fees. The appropriate interest for each time period is determined multiplying plaintiff's judgment by the statutory interest rate, dividing that sum by 365 to determine the daily interest figure, and multiplying the daily interest figure by the number of days in the applicable time period.

| Time Period | Statutory Interest Rate | Daily Interest Figure | Days within the Time Period | Interest |
| --- | --- | --- | --- | --- |
| 7/1/2014 | 2.622% | $41.19 | 84 | $3,459.96 |
| 1/1/2015 | 2.678% | $42.07 | 181 | $7,614.67 |
| 7/1/2015 | 2.468% | $38.77 | 184 | $7,133.68 |
| 1/1/2016 | 2.571% | $40.38 | 182 | $7,349.16 |
| 7/1/2016 | 2.337% | $36.71 | 184 | $6,754.64 |
| 1/1/2017 | 2.426% | $38.11 | 181 | $6,897.91 |
| 7/1/2017 | 2.902% | $45.58 | 184 | $8,386.72 |
| 1/1/2018 | 2.984% | $46.87 | 72 | $3,374.64 |

The Court, therefore, awards plaintiff $50,971.38 in interest.

## IV. Conclusion

For the reasons stated above, plaintiff's motion is GRANTED IN PART AND DENIED IN PART.

IT IS ORDERED THAT:

Plaintiff's request for judgment is DENIED AS MOOT.

Plaintiff's request for attorney's fees is GRANTED IN PART.

Plaintiff's request for costs is DENIED without prejudice.

Plaintiff's request for interest is GRANTED.

Dated: March 20, 2018

>   s/George Caram Steeh
>   GEORGE CARAM STEEH
>   UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
March 20, 2018, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk